## No. 10,235.

### H. W. STACKHOUSE ET AL. VS. M. J. ZUNTZ ET ALS.

Writs of seizure and sale, unlike writs of *fi fa*, are not returnable within a fixed delay.

They remain in the hands of the sheriff until satisfied in whole or in part, or ordered by the court, or the plaintiff, to be returned.

Such a writ, if returned in court by the sheriff after an injunction and before seizure, does not lose its efficacy and, after the dissolution of the injunction is valid authority for further proceedings under it.

By unduly returning the writ, the sheriff cannot deprive the seizing creditor of any of his rights under it, no more than he could divest him of his rights under the executory process decree. Both are his property.

No *alias* writ of seizure and sale is necessary in such case. The sheriff may simply possess himself with the writ, by withdrawing it from the files of the case in court.

Misnaming the court, from which a writ of *fieri facias* issued, under which a seizure and sale are made, does not vitiate the proceedings and the adjudication, when the advertisement and deed contain sufficient DATA to ascertain which the court is, under whose judgment

the execution issued, particularly where the writ under which the sheriff must have acted and of which he must have preserved copy, is in the record, although it is not shown conclusively that he did act under such writ and did retain such copy and where the objections are made by parties to the record, who had notice of the proceedings—and who did not object.

A judgment dissolving an injunction with damages rendered against H. Stackhouse, a dead man, *eo nomine*, is a valid judgment binding on his succession and legal representatives, who, previous to the judgment were made and became parties to the proceedings. The error is clerical and does not vitiate the judgment and sales under it.

An adjudicatee at a sheriff's sale, who exhibits a valid judgment, execution and deed, and who has remained in the undisturbed possession of the property for more than ten years thereafter, as ostensible owner, has a good title to the same and must be protected in his rights to it.

APPEAL from the Civil District Court for the Parish of Orleans. *Houston*, J.

*Farrar, Jonas & Kruttschitt*, for Plaintiffs and Appellants.

*Gurley & Mellen*, and *Hornor & Lee*, for Defendants and Appellees.

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is an action to annul sheriffs' sales of two plantations, in the possession of defendants as testamentary heirs of the original adjudicatee, and to operate a partition of the same by licitation.

The main ground of attack is, that the writs under which the plantations were seized, advertised and adjudicated, are absolute nullities; in consequence of which no title was divested and passed.

The writ, which issued under a decree for executory process against one of the plantations and by virtue of which the property was adjudicated, is said to be null, *because* it was returned by the sheriff before any seizure had been effected and *because*, after the injunction which had arrested it had been dissolved it was reissued without authority and executed, without observing the essential formalities required by law.

The *fi fa*, under which the other plantation was adjudicated is said to have been unwarranted by any judgment from the court in whose name it purports to have issued and that, if there be any judgment, it is absolutely void.

The prayer is for the nullity of such judgment of the sheriffs' adjudications; for the recognition of the plaintiffs as owners of the undivided half of each plantation, and for a sale to effect a partition.

The suit has another object—a share in the revenues of the plantations, put down, up to a certain date, at $400,000; but by agreement, the issue is presently restricted to the question of title *vel non*.

The defenses set up are numerous: the general issue, the validity of the judgment, writs, proceedings and sales attacked, *res judicata*, estoppel, prescription, want of tender, divestiture of any title which plaintiffs may ever have had, an independent title in the author of defendants.

From an adverse judgment the plaintiffs appeal.

The dominant facts are the following:

J. E. Zuntz was a creditor of William and Haywood Stackhouse for $50,000, secured by mortgage on a plantation belonging to them and known as *Bellechasse*.

On February 6, 1867, to satisfy that debt, he obtained executory process from the Second Judicial District Court for the Parish of Plaquemines, in which the property was situated and the defendants were domiciled.

On the 18th following, before any seizure had been made, the defendants obtained an injunction arresting further proceedings.

On November 15th of the same year, Zuntz obtained an *alias* writ against the crops on the place.

On the 29th following, by consent, the case was transferred from the Plaquemines Court to the Fifth District Court for the Parish of Orleans for determination of all issues presented by the injunction, while the *alias* writ was abandoned on a conditional bond by the defendants to represent the crops.

The injunction was dissolved by the Fifth District Court, with twenty per cent damages and eight per cent interest.

From the judgment then rendered, an appeal was taken to the Supreme Court, pending which Haywood Stackouse died (December 18, 1869), his widow and heirs being made parties, and judgment was rendered reversing that appealed from and remanding the case.

On a new trial, the lower court rendered a like judgment of dissolution with damages, etc., which on review was affirmed.

The sheriff then, under the writ of seizure and sale which had been unfettered, levied on the Bellechasse plantation and under a *fi fa*, seized the other place known as the *Villéré* plantation.

Both were advertised, the former under the seizure and sale writ, the latter under the *fi fa*. They were appraised and on the day fixed for the offering, they were adjudicated to J. E. Zuntz; the first, on February 7, 1874 for $33000, the second, on June 6, of the same year for

$46761, both amounts being retained by him as seizing creditor for much more.

On November 29, 1881, Zuntz sued the representatives of Haywood Stackhouse and the syndic of William Stackhouse, who had previously gone to bankruptcy, to revive the judgment dissolving the injunction and awarding damages.

To this action the defense was made that the judgment sought to be revived was an absolute nullity, because rendered against a *dead man*, Haywood Stackhouse, *eo nomine*.

The lower court declined to revive the judgment, but on appeal the judgment was reversed and the judgment was revived.   36 A. 529.

From the dates of the adjudications of the plantations to him, Zuntz continued in possession, as ostensible owner, until his death, which occurred on February 7, 1885.

By his will, he instituted M. J. Zuntz usufructuary and J. E. and S. H. Zuntz his heirs.

On June 30, 1885, the present suit was instituted against these beneficiaries, as the representatives of J. E. Zuntz, for the purposes heretofore mentioned.

I.

The objections to the validity of the adjudication of the *Bellechasse* plantation are grounded on the nullity of the writ of seizure and sale which was in the sheriffs' hand and under which he pretends to have acted.

That writ is so charged:

1. Because it was *returned* by the sheriff to the court which issued it, some three months and a few days after its date, before any seizure of the property therein described.

2. Because, if not so returned, it ceased to have any vitality, when Haywood Stackhouse died.

The writ is dated February 8, 1867.   It was received by the sheriff on the 15th following, who on the next day, served copies of the petition and summonses and notices of seizure and sale on William Stackhouse in person and on Haywood Stackhouse, by leaving same at his last residence, suspending further proceedings, in consequence of the injunction arresting its execution, on the 18th of the same month and certifying to those facts on the 20th following.

At foot of the sheriffs' statement, there is a filing of May 18, 1867, signed by the clerk of the Second Judicial District Court for the Parish of Plaquemines.

Stackhouse et al. vs. Zuntz et als.

There is nothing beyond this, to show that the sheriff returned the writ into court; but, conceding that, under some interpretation of the law regulating his duties, he thought he was bound to return the writ to the court, to inform it of his acts and doings under it up to the time when the injunction issued and to enable parties to use it and his return thereon that far,—it does not follow that he has thereby put it out of life.

He could not have done so, had such been his intention, for, the writ was the property of the plaintiff in the suit, who was entitled to have it to remain in the sheriffs' hands for execution, until satisfied in whole, or in part, or returned into court, either by order of the creditor himself, or of the court issuing it.

A writ under executory proceedings is not, like a *fieri facias* required by law to be returned within a fixed delay. C. P. 642. It remains in the hands of the executive officer, until satisfied, or duly ordered to be returned as just stated, and it is then only that it expires.

So that, whenever by accident, error, or oversight, it is handed back by the sheriff to the clerk of the court and by the latter endorsed, before execution, satisfaction or due return, it remains dormant, subject to return to the sheriff for further action under it.

It therefore follows that, as soon as the injunction was finally dissolved, the sheriff had a right to possess himself of the writ and to proceed to its execution.

It is not correct to say that, anyhow the writ ceased to have any vitality and expired, when Haywood Stackhouse departed this life, because it was then an unexecuted writ, one under which no seizure had been made and which was incapable of execution in that form, against his estate.

It is as settled by the law and jurisprudence of this State, as any rule of practice can be, that a writ of seizure and sale may issue alike against the property of a living, or that of a deceased person. C. P. 734.

If therefore a creditor institutes executory proceedings against the property of a living debtor and that debtor subsequently dies, it is perfectly legitimate and lawful to prosecute the same thereafter, on making the legal representatives of the deceased, parties.

The proceedings do not abate by the death of one of the parties. They continue between the surviving party and the heirs of the one deceased, in the same manner that actions are permitted to do. C. P. 21; 361.

Under the circumstances, it was not therefore, either necessary or useful, to obtain an *alias* writ, or any order to verify the original one.

It was well held that the sale of a deceased husband's property, under executory process, is invalid, when the proceedings are not contradictarily carried on with the legal representatives of the succession, or when the heirs and others concerned in the ownership have not been made parties. Germaine vs. Mallerick, 31 A. 371; Surgi vs. Colmer, 22 A. 20.

From a further endorsement on the writ of seizure and sale, it appears that, on December 22, 1873, the sheriff seized the *Bellechasse* plantation and, after notice to William Stackhouse at his domicil and to Haywood Stackhouse by service on Mrs. Stackhouse in person, he advertised the same and after it had been duly appraised, he adjudicated it to J. E. Zuntz, on the 7th of February, 1874, for $33,000.

An objection is made to the mode in which the notices were served by the sheriff, namely: that they were served on Mrs. Stackhouse.

It is perfectly true that the sheriff ought to have stated the capacity in which Mrs. Stackhouse stood in the matter; but his omission to have done so, cannot prejudice the validity of the sale, which cannot be jeoparded by such derelictions on his part, as it is proved *aliunde*, that at the time, Mrs. Stackhouse was the widow in community of Haywood Stackhouse and the duly qualified and commissioned tutrix of the children born of their marriage, all of whom were then under age. Her letters of tutorship are dated June 2, 1870.

In the case of Germaine, 31 A. 371, the sale under executory process was annulled because the proceedings were conducted contradictarily with the wife of Mallerich, while he was living and absent and after his death; she being at the time, neither his agent, nor the tutrix of their children; and a similar ruling was made in the Surgi case, 22 A. 20, for kindred and stronger reasons.

It may be useful to reiterate that Mrs. Stackhouse as widow in community and as tutrix, had been duly made party to the executory and injunction proceedings in the Supreme Court pending the first appeal from the reviving judgment: on May 31, 1870 and that she was appellant from the second judgment rendered by the Fifth District Court on March 20th, 1872, and signed the bond of appeal, as widow in community and as tutrix, along with certain of the heirs; facts which were found and stated by this Court, in the opinion rendered on the second appeal in the suit to revive the judgment disssolving the injunction, with damages. 36 Ann. 532, Stackhouse vs. Zuntz.

## II.

It is next claimed that the adjudication of the *Villeré* plantation is a nullity, because it took place under the authority of a writ of *fieri facias*,

the issuance of which was authorized by no judgment, either from the parish court, or the Second Judicial District Court for the Parish of Plaquemines.

The deed which the sheriff delivered to Zuntz as adjudicatee of that plantation recites that " by virtue of a writ of *fieri facias* to me (him) directed by the Honorable the Parish Court in and for the Parish of Plaquemines, at the suit of Second Judicial District Court of Louisiana for the Parish of Plaquemines, at the suit of W. and H. Stackhouse vs. James E. Zuntz, No. 906 of the docket of said court, after having fulfilled and complied with all the previous legal requisites, did seize the following property, to wit," etc.

The newspaper, in which the advertisement of sale was published by the sheriff, recites that " by virtue and in obedience to a writ of *fieri facias* to me (him) directed by the Honorable the Second Judicial District Court in and for the Parish of Plaquemines in the above entitled suit, I have seized and will proceed to sell," etc.

The caption of the advertisement is; " W. and H. Stackhouse vs. James E. Zuntz, Second Judicial District Court in and for the Parish of Plaquemines, No. 906."

There is in the transcript a writ of *fieri facias*, issued in the name of the Fifth District Court for the Parish of Orleans, in the case of W. and H. Stackhouse vs. James E. Zuntz, No. 18,850, of the docket of that court, dated November 11th, 1873, addressed to the sheriff of the Parish of Plaquemines, commanding him to seize and sell the property of the plaintiffs and their surety, on the injunction bond in *solido* and cause to be made twenty per cent damages on the amount of the judgment aforesaid, say : fifty thousand dollars, together with eight per cent interest, as allowed in the order of seizure and sale, and also $606 costs, and his own costs, to satisfy a judgment rendered against said plaintiffs and their surety on the injunction bond in the said Fifth District Court for the Parish of Orleans, 20th day of February, 1872, in favor of James E. Zuntz, and how he shall have executed this writ, to make returns to said court, within seventy days, according to law.

It appears that on the 12th of December following, this writ was received by the sheriff, and that on the 19th of the same month, he made a seizure under it, appointing and placing a keeper on the property seized ( the Bellechasse plantation).

It is an important fact that the original proceedings for executory process were docketed in the Second Judicial District Court for the Parish of Plaquemines under No. 906, and that, after the injunction had been obtained arresting the writ, under a petition bearing the same

number, the whole record was transferred to the Fifth District Court for the Parish of Orleans, by which the issues raised were to be determined, the executory proceedings were docketed, under No. 18,719, and the injunction suit under No. 18,850, although apparently they were subsequently more or less confounded,—the judgment dissolving the injunction, however, being rendered in the record bearing No. 18,850.

It is apparent that the *fieri facias* mentioned in ;the advertisements and in the sheriff's deed, could not have been and was not, issued by either the Parish Court, or the Second Judicial District Court for the Parish of Plaquemines, for the plain reason, that the proceedings never were pending before the first named court, and that they were, subsequent to the injunction, transferred, from the District Court in Plaquemines parish, to the Fifth District Court for the Parish of Orleans, and that neither the Parish Court nor the District Court of Plaquemines, could or did render any judgment therein, on which the *fieri facias* alluded to by the sheriff could have issued and that neither issued an execution. ·

The only court that could have rendered and that did render a judgment in those proceedings—originally No. 906 of the District Court of Plaquemines,—on which execution could issue, was necessarily the Fifth District Court for the Parish of Orleans.

It is, therefore, clear that the advertisements and the deed, misnamed the court which issued the *fi fa* under which the sheriff acted ; but this error, patent on the face of the papers, could not prejudice the validity of the proceedings, because, by erasing the words, Parish Court, and leaving the title of the Second Judicial District Court for the Parish of Plaquemines, the title of the suit and the number given, the *fieri facias* is readily connected through No. 906, with the case transferred to and decided by, the Fifth District Court for the Parish of Orleans, by which the judgment dissolving the injunction with damages was rendered and under which *the fieri facias* issued.

The record does not, therefore, show that any *fi fa* was ever issued by the Parish Court, or the District Court for the Parish of Plaquemines ; but it establishes that one was issued by the Fifth District Court for the Parish of Orleans, on the judgment dissolving the injunction with damages, dated November 11th, 1873, and which must have been and was the *fieri facias* mentioned in the advertisements and in the deed to Zuntz.

The presumption, under the exceptional circumstances of this case, complicated as it is, by the disappearance of transcripts from the clerk's office of this court, and of original documents attached thereto which

might have proved of great service and value in the determination of this controversy, begun some twenty years ago and more, is, that the sheriff of the Parish of Plaquemines did his duty, as pointed out by law, and that, having, after the first seizure made of the Bellechas·e plantation, seized the *Villeré* plantation, he, on the expiration of the *fieri facias* from the Fifth District Court for the Parish of Orleans, retained a copy of it (C. P. 642, par. 4) and under it, continued the proceedings for the seizure, advertisement, appraisement and sale of the *Villeré* plantation, consummating them, by the adjudication of it on June 6th, 1874, to the seizing creditor, J. E. Zuntz, for $4676, which he retained.

It hence follows, that the writ of *fieri facias*, under which the sheriff proceeded, was that issued by the Fifth District Court for the Parish of Orleans, on the judgment dissolving the injunction with damages.

The plaintiffs, however, contend that even if such be the case, the judgment is itself a nullity, because rendered against Haywood Stackhouse, *eo nomine*, who was at the time a *dead man*.

When the decree of seizure and sale against the Bellechasse plantation was rendered and enjoined, and when the injunction was dissolved with damages by the Fifth District Court, Haywood Stackhouse was living. He died on December 18th, 1869, after taking an appeal from the dissolving judgment awarding damages.

Before the Supreme Court passed upon this appeal, namely: on the 31st of May, 1870, his widow, as surviving spouse in community and as tutrix of his children, who were all minors, had been made party to the proceedings.

It is only *after* she was thus made party, that the Supreme Court reversed the judgment and remanded the case.

The order making her, in both capacities, party to the proceedings, had for its effect, to retain her as such party, for all further proceedings in the cases original and injunction.

On the new trial by the lower court, in pursuance of the remanding of the case by the Supreme Court, a judgment was rendered on the 20th of February, 1872, signed on the 5th of March following, contradictorily with her as such party, condemning both William and *Haywood* Stackhouse and the surety on the injunction bond to the 20 per cent damages.

On March 13th, 1872, considering that the judgment rendered against *Haywood Stackhouse, eo nomine,* was one against his succession and its representatives, and that they were aggrieved thereby, Mrs. Stackhouse, as widow in community and as tutrix of four of her minor children, joined by the fifth child who had married and was assisted by her

husband, obtained a suspensive appeal on giving a bond for $30,000, which was afterwards furnished and signed by them all.

On the trial of the case on appeal they were represented by counsel and, after hearing, this Court affirmed the judgment dissolving the injunction with damages.

Subsequently, as already stated, proceedings were instituted for the revival of this judgment, and the lower court rendered a judgment which was reversed on appeal and the revival decreed.

In those proceedings, the defence now urged was made, that the judgment sought to be revived was an absolute nullity, because it was rendered against Haywood Stackhouse, *eo nomine*, he being at the time, a *dead man*. The defence did not prevail, and an application for a rehearing, though vigorously pressed, was refused.

It is unnecessary to determine whether or not that defence was then passed upon, so that it cannot in the present action be considered and determined; but the fact is that it did not prevail, as the judgment sought to be revived, was not pronounced to be an absolute nullity, but was revived by this Court on appeal.

Treating the question, therefore, as *res nova*, there can be no doubt that the judgment attacked, rendered as it was, is a perfectly valid judgment affecting the succession and legal representatives of Haywood Stackhouse, who were party to the suit at the time it was rendered.

True, it would have been more regular had it been rendered expressly against William Stackhouse and the succession and legal representatives of Haywood Stackhouse; but this irregularity, which is nothing but a clerical error, is not such as can vitiate radically the judgment, which must consequently be interpreted and produce its effects, as affecting and binding on the succession and the legal representatives of Haywood Stackhouse.

From that standpoint, it follows that the judgment, being a valid judgment against the succession and representatives, it could serve as a foundation for the issuance of a writ of *fieri facias* to enforce the collection of the amount which the plaintiffs in injunction had been condemned to pay.

Had not the widow as widow in community and as tutrix, been a party to the record at the time the judgment was rendered, the case would have presented quite different features.

If it were necessary to add any other reasons to maintain the validity of the adjudications attacked, it would perhaps be sufficient to refer to Articles C. P. 612 and R. C. C. 3543, which have a bearing to put a term to this controversy.

While it is true, that the nullity of a judgment rendered against a party without his having been cited, or by an incompetent judge, even if all the formalities of the law have been observed, may be obtained, could it be asked, where the defendant was present in the parish and yet suffered the judgment to be executed without opposing the same, C. P. 612, and where three times *five* years and more have elapsed, since the time at which a public sale was made, by one authorized to sell at public auction, which might have been assailed on account of informalities connected with or growing out of such sale? R. C. C. 3543.

The views which we have expressed towards the validity of the two writs and of the judgment and sales attacked, render it useless to consider the other defences set up by the legal representatives of James E. Zuntz.

Judgment affirmed.